# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| XAVIER RIOS, | ) | |
|     Plaintiff | ) | C.A. No. 17-144 Erie |
| | ) | |
| v. | ) | |
| | ) | District Judge Susan Paradise Baxter |
| WAL-MART STORES EAST, L.P., | ) | |
|     Defendant. | ) | |

## MEMORANDUM OPINION

## I.  INTRODUCTION

### A.  Relevant Procedural History

Plaintiff Xavier Rios initiated this action on April 18, 2017, by filing a complaint in the Court of Common Pleas of Crawford County, Pennsylvania, against Defendant Wal-Mart Stores East, L.P. [ECF No. 1-2]. The case was subsequently removed to this Court pursuant to a Notice of Removal filed by Defendant on June 2, 2017. [ECF No. 1]. Plaintiff alleges that, due to Defendant's negligence, he suffered a slip and fall in the men's bathroom of the Wal-Mart store located in Meadville, Pennsylvania, on January 27, 2017. As a result, Plaintiff claims that he sustained numerous injuries for which he seeks monetary damages.

Defendant filed an answer to Plaintiff's complaint on June 8, 2017, and the parties completed discovery on February 28, 2018. Now pending before this Court is Defendant's motion for summary judgment [ECF No. 25], asserting that Plaintiff cannot adduce sufficient evidence to support his claim of negligence as a matter of law. Plaintiff has since filed a brief in opposition to Defendant's motion [ECF No. 30], to which Defendant has filed a reply brief [ECF No. 35]. This matter is now ripe for consideration.

### B.  Relevant Factual History

On January 27, 2017, Plaintiff and his significant other went shopping at Defendant's store in Meadville, Pennsylvania, at approximately 1:45 p.m. (ECF No. 34, Plaintiff's deposition transcript, at p. 208 (internal p. 77)). At approximately 2:00 p.m., Plaintiff was experiencing stomach problems and urgently needed to use the bathroom. (Id. at pp. 216-17 (internal pp. 85-86)). He entered the men's bathroom and hurriedly proceeded to the second, handicap stall, which was located at the far end of the bathroom, on the right. (Id. at p. 216(internal p. 85)). On the way, Plaintiff passed two countertop sinks, followed by two urinals separated by a privacy divider, and then the first stall. (Id. at pp.214-216 (internal pp. 83-85)). Plaintiff also noticed an orange triangle caution cone on the floor; however, he didn't look down at the floor on the way to the stall. (Id. at pp. 216-17 (internal pp. 85-86)). Plaintiff was in the stall for at least 13 minutes. (ECF No. 33, Plaintiff's Counter-Statement of "Undisputed Facts," at ¶ 14).

When Plaintiff exited the stall, he walked toward the sinks and again saw the orange caution cone, which he stated was between, and approximately three feet out from, the two urinals, toward the center of the floor. (ECF No. 28, Defendant's Concise Statement of Undisputed Material Facts, at ¶¶ 19-20; ECF No. 33, at ¶ 15). Although he saw the caution cone, Plaintiff did not pay attention to the floor or if there was any water on it. (ECF No. 28, at ¶ 21). After taking two to three steps past the cone, Plaintiff's left foot slipped forward and he fell, landing on his left side. (ECF No. 28, at ¶24; ECF no. 33, at ¶ 16). While he was lying on the floor, Plaintiff observed a two-to-three-foot puddle behind and to the left side of his head. (ECF No. 33, at ¶ 18). Plaintiff suspects that he slipped on water that was tracked by people who stepped in the puddle when coming from the urinals. (ECF No. 28, at ¶ 28; ECF No. 33, at ¶ 18). Plaintiff did not see the water on which he allegedly slipped when he entered the bathroom, and is unsure how long the water had actually been on the ground. (ECF No. 28, at ¶¶ 29, 33).

After about five or six seconds, Plaintiff got up from the ground, washed his hands, and exited the bathroom. (Id., at ¶ 35). Upon leaving the bathroom, Plaintiff informed two Wal-Mart employees that there was a puddle in the bathroom and that he had slipped. (Id. at ¶ 36). Plaintiff then went to the customer service area and filled out a Customer Incident Report for the assistant store manager, Pat Newell ("Newell"). (Id. at ¶¶ 37-38; ECF No. 33, at ¶ 19). Newell also filled out his own statement of the incident, stating, in pertinent part,

> … [Plaintiff] said he slipped and fell in the men's bathroom, He said there was a puddle and a wet floor sign. Customer service manager Lucy Castille and Nicole Freese saw that there was a puddle and a wet floor sign. By the time I came up, maintenance already cleaned up the puddle…. (ECF No. 34, at p. 2).

## II. DISCUSSION

Pennsylvania substantive law governs the negligence claim raised by Plaintiff in this diversity action. See Chamberlain v. Giampapa, 210 F.3d 154, 158 (3d Cir. 2000); see also Erie R.R. Co. v. Tompkins, 304 U.S. 64 (1938). Under Pennsylvania law, a plaintiff must prove: (1) the existence of a legal duty requiring a certain standard of conduct; (2) breach of that duty by the defendant; (3) a causal connection between defendant's breach and plaintiffs' injury; and (4) actual loss or damages. Berrier v. Simplicity Mfg., Inc., 563 F.3d 38, 61 (3d Cir. 2009).

Here, Defendant argues that Plaintiff's negligence claim fails as a matter of law because the record evidence establishes that (i) Plaintiff assumed the risk of an open and obvious condition negating any liability on Defendant's part, and (ii) he cannot present any evidence that Defendant had notice of any dangerous condition. Each of these arguments will be considered in turn.

### A. Assumption of the Risk

Defendant contends that, due to the presence of the orange caution cone, which Plaintiff acknowledged having seen and understood as a warning that water may be present, Plaintiff "failed to avoid an open and obvious condition on the premises" and, thus, assumed the risk of injury. As a result, Defendant argues that Plaintiff's negligence claim is barred as a matter of law. Given the current state of Pennsylvania law, however, Defendant's argument is unfounded.

In Hawkins v. Waynesburg College, 2008 WL 2952888 (W.D.Pa. July 30, 2008), our district court noted that, "Except under circumstances not presented here, 'the doctrine of assumption of the risk, with its attendant complexities and difficulties, ... has been supplanted' by the Pennsylvania legislature's 'adoption of a system of recovery based on comparative fault.'" Id. at *6, quoting Nissley v. Candytown Motorcycle Club, Inc., 913 A.2d 887, 892 n. 2 (Pa.Super. 2006) (citing Hughes v. Seven Springs Farm, Inc., 563 Pa. 501, 762 A.2d 339 (2000) (recognizing exception for cases involving downhill skiing)). See also Loughran v. The Phillies, 888 A.2d 872 (Pa.Super. 2005) (reviving and recognizing some form of assumption of risk for cases involving attendance at baseball games), appeal denied 906 A.2d 543 (Pa. 2006), citing Romeo v. Pittsburgh Assocs., 787 A.2d 1027, 1032 (Pa.Super.2001) ("[w]ith a few minor exceptions, the assumption of risk doctrine has ... been abolished in Pennsylvania") (citation omitted). Since Defendant cannot show that the instant case falls within any of the existing exceptions, its request for summary judgment based upon assumption of the risk cannot stand.

**B.  Notice of Dangerous Condition**

Alternatively, Defendant argues that Plaintiff has failed to present any evidence that Defendant knew of the dangerous condition that allegedly caused Plaintiff's slip and fall and, therefore, Plaintiff cannot establish Defendant's negligence as a matter of law. The Court agrees.

Pennsylvania has adopted Section 343 of the Restatement (2d) of Torts, which sets forth the duty owed to invitees,[1] as follows:

> A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land, if, but only if, he:
>
> a. knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and
>
> b. should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and
>
> c. fails to exercise reasonable care to protect them against the danger.

Honis v. Giant Food Stores, Inc., 2016 WL 3354886, at *3 (Pa.Super. Jun. 16, 2016), quoting Restatement (2d) of Torts Section 343. The Honis court noted that, "Our Pennsylvania Court has explained the import of this section as follows:

> The mere existence of a harmful condition in a public place of business, or the mere happening of an accident due to such a condition is neither, in and of itself, evidence of a breach of the proprietor's duty of care to his invitees, nor raises a presumption of negligence. In order to recover damages in a slip and fall case such as this, the invitee must present evidence which proves that the store owner deviated in some way from his duty of reasonable care under the existing circumstances. **This evidence must show that the proprietor knew, or in the exercise of reasonable care should have known, of the existence of the harmful condition. Section 343 also requires the invitee to prove either that the store owner helped to create the harmful condition, or that it had actual or constructive notice of the condition**. Zito v. Merit Outlet Stores, 647 A.2d 573, 575 (Pa.Super.1994) (internal citations and quotations mark omitted)."

---

[1] It is beyond dispute that Plaintiff was at Defendant's store in Meadville, Pennsylvania as an invitee.

Honis, at *3 (emphasis added).

In Martino v. Great A & P Tea Co., 213 A.2d 608 (Pa. 1965), the plaintiff, an invitee, brought an action against a self-service store for injuries sustained when she slipped and fell from stepping on a grape on the floor. Because there was no evidence as to how the grape got onto the floor or how long it had been there prior to the fall, the court concluded that there was no evidence from which a jury might conclude that the store breached its duty in not removing it. Similarly, in Moultrey v. Great A&P Tea Co., 422 A.2d 525 (Pa.Super. 1979), the plaintiff, an invitee, slipped on a cherry on the floor and fell. Like the plaintiff in Martino, the plaintiff in Moultrey failed to produce any evidence that the proprietor of the store either had a hand in creating the harmful condition, or had actual or constructive notice of such condition. As a result, the court granted a compulsory nonsuit.

Here, likewise, there has been no evidence introduced by Plaintiff that shows how the water upon which Plaintiff allegedly slipped got on the floor or how long it was there. In fact, Plaintiff acknowledged that other people entered and left the bathroom while he was in the stall and that someone could have created the alleged condition during such time. (ECF No. 28, at ¶ 33). Moreover, there is no evidence establishing that Defendant had actual or constructive notice of the alleged water hazard. In this regard, Plaintiff points to the presence of the caution cone as evidence of Defendant's knowledge that water was present; however, Plaintiff concedes that it was common practice for the maintenance worker on duty to place an orange cone in the middle of the bathroom floor and leave it there all day, even if the floor was dry. (ECF No. 33, at ¶ 5). Specifically, Kiashia Prussack, the maintenance worker on duty on the day of the incident in question, offered the following deposition testimony regarding her practice of leaving the orange cone in the middle of the bathroom floor all day:

>   Q. … When you would leave [the bathroom] would you leave the
>   orange cone there?

| | | |
|---|---|---|
| A. | Yes. | |

Q. Okay. And what was the idea behind that?

A. It was just a habit I always had when I first started.

Q. Would that have been to alert people that the floor had been mopped or could possibly be wet?

A. It could possibly be wet. If people are coming in - - - if people, they wash their hands all the time, like wringing their hands off, shake their hands off, and the water would get on the floor. So just in case if somebody saw water there, like there just in case the floor would be wet.

Q. How long would you leave the orange cone in there after you were done cleaning?

A. I'd leave it on there the whole time, all day long with it.

\* \* \*

Q. So the cone could be in the middle of the floor, and the floor could be wet or it could be dry and the cone would still be there?

A. Yes.

(ECF No. 34, Kiashia Prussack Deposition Transcript, at pp. 28-29 (internal pp. 25-26)).

It is apparent from this uncontroverted testimony that the mere presence of the orange cone on the bathroom floor at the time of Plaintiff's alleged slip and fall fails to establish Defendant's actual or constructive notice of a dangerous or potentially hazardous condition. This is even more apparent considering Plaintiff's acknowledgement that the bathroom in which the incident occurred was routinely cleaned on the odd hour, every two hours; i.e., 11:00 a.m., 1:00 p.m., 3:00 p.m., and so on. (ECF No. 33, at ¶ 4). This fact establishes that the bathroom was cleaned one hour before Plaintiff first entered the bathroom, making it highly improbable that the maintenance worker created or observed the puddle of water and water-tracked footprints Plaintiff described seeing approximately fifteen minutes later, after his alleged fall.

7

In fact, Plaintiff acknowledges that "If a cart was taken in to clean the bathroom at some time other than the normal scheduled times, such as at approximately 2:16 pm. On January 27, 2017, it would be indicative of some reported problem with the bathroom." (Id. at ¶ 7). Plaintiff further concedes that "Store personnel went into the bathroom **after** the report was made by [Plaintiff] and normally would not have done so unless there was a potential problem that required attention." (Id. at ¶ 9 (emphasis added). These undisputed facts establish that Defendant obtained knowledge of the presence of water on the men's bathroom floor only after Plaintiff reported his slip and fall accident, not before. Since no other evidence exists in the record to establish that Defendant had prior knowledge of the dangerous condition that allegedly caused Plaintiff's slip and fall, Plaintiff is unable to prove negligence as a matter of law, and summary judgment will be granted in favor of Defendant, accordingly.

An appropriate Order follows.